Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MILCA IVETTE ORTIZ CHÉVEREZ<br><br>APELANTE<br><br>v.<br><br>COLEGIO LA SAGRADA FAMILIA; DIRECTORA SIULMA M. DÁVILA MUÑOZ; RISING STARS FOUNDATION Y OTROS<br><br>APELADA | KLAN202500383 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2023CV11610<br><br>Sobre: Procedimiento Sumario bajo Ley Núm. 2 |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de junio de 2025.

Comparece ante nosotras la señora Milca Ivette Ortiz Chéverez (Sra. Ortiz Chéverez; apelante) por derecho propio y nos solicita que revoquemos la Sentencia emitida por el Tribunal de Primera Instancia, Sala de San Juan (TPI), el 25 de abril de 2025 y notificada en esta misma fecha. En el referido dictamen, el foro primario declaró Ha Lugar una moción de sentencia sumaria presentada por el Colegio Sagrada Familia y Rising Stars Foundation, Corp.

Por los fundamentos que expondremos a continuación, confirmamos la decisión apelada.

**I**

La Sra. Ortiz Chéverez trabajó como maestra de primer grado en el Colegio Sagrada Familia desde septiembre de 2020 hasta mayo de 2022. El 16 de diciembre de 2023 la Sra. Ortiz Chéverez presentó una *Querella* contra el Colegio Sagrada Familia y Rising Stars Foundation, Corp. (en conjunto, apelados o parte apelada) donde

alegó despido injustificado, discrimen por razón de sexo y represalias.[1] Esta fue contestada por el Colegio Sagrada Familia y negó todas las alegaciones presentadas en su contra. También afirmó que la reclamación de la apelante era una frívola e inmeritoria puesto que las leyes citadas no le cobijaban ya que esta era una empleada por un término fijo y no por un periodo indeterminado. Por tal motivo, adujo que la apelante no fue despedida sin mediar justa causa y solicitó la desestimación de la *Querella*.[2]

El 20 de marzo de 2024 el Colegio Sagrada Familia solicitó al foro *a quo* que el proceso sumario se convirtiera a ordinario por entender que se trataba de un caso complejo que ameritaba un descubrimiento de prueba más abarcador que el comprendido en la Ley Núm. 2.[3] El TPI declaró dicha solicitud Sin Lugar y calendarizó la fecha para culminar con el proceso de descubrimiento de prueba.[4] Luego de haber sido emplazada por edicto, la corporación Rising Stars Foundation sometió su contestación a la *Querella* y, de igual manera, negó las alegaciones en su contra y afirmó que la Sra. Ortiz Chéverez no fue despedida, sino que su contrato a término fijo concluyó en la fecha acordada. También solicitó la desestimación de la *Querella* en su totalidad.[5]

Así las cosas, las apeladas presentaron ante el foro *a quo* una moción de sentencia sumaria el 8 de noviembre de 2024 donde expusieron que no había controversias sobre los hechos materiales del caso, por lo que solo restaba aplicar el derecho vigente. A raíz de lo anterior, nuevamente solicitaron la desestimación de todas las causas de la *Querella* por tratarse de un contrato estipulado por un periodo de tiempo fijo, el cual comenzó el 1 de julio de 2021 y duró hasta el 31 de mayo de 2022. Para sustentar sus argumentos

---

[1] Apéndice del recurso, Anejo A.
[2] Apéndice del *Alegato*, págs. 20-28.
[3] Apéndice del *Alegato*, págs. 29-33.
[4] Apéndice del *Alegato*, págs. 34-37.
[5] Apéndice del *Alegato*, págs. 10-19.

anejaron prueba documental correspondiente que constó de declaraciones juradas, misivas y los contratos de empleo otorgados entre las partes.[6] Oportunamente, la Sra. Ortiz Chéverez presentó su oposición y solicitó que se dictara sentencia sumaria a su favor.[7] Luego de algunos trámites procesales el foro primario dictó Sentencia. En su dictamen, declaró Ha Lugar la solicitud de sentencia sumaria presentada por la parte apelada. Sus expresiones fueron las siguientes:

> Toda vez que no existe controversia de hechos materiales al presente caso, entendemos que el mecanismo de sentencia sumaria es el que mejor dispone de este asunto, por lo que procedemos declarar CON LUGAR la Moción de Sentencia Sumaria presentada por COLEGIO LA SAGRADA FAMILIA y RISING STARSFOUNDATION, CORP. De conformidad con la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, y la doctrina jurídica establecida por el Tribunal Supremo en el caso de *Pérez Vargas v. Office Depot/Office Max, Inc.*, 203 DPR 687, 703 (2019), se dicta esta Sentencia Sumaria, desestimando la Demanda en su totalidad. Por los fundamentos señalados, se declara HA LUGAR la Moción de Sentencia Sumaria [Entradas 27, 36, 41] presentada por COLEGIO LA SAGRADA FAMILIA y RISING STARS FOUNDATION, CORP., y se desestima la Demanda, con perjuicio.[8]

Inconforme con la decisión del TPI, la apelante acude ante nosotras. En su recurso de apelación, la Sra. Ortiz Chéverez expuso los siguientes señalamientos de error:

A. El Tribunal erró al conceder sentencia sumaria porque existían controversias genuinas de hechos materiales.

B. El Tribunal aplicó incorrectamente el estándar de sentencia sumaria.

C. El Tribunal no consideró adecuadamente la prueba presentada.

La parte apelada compareció oportunamente, por lo que el recurso quedó perfeccionado y nos encontramos en posición de resolver. Veamos.

---

[6] Apéndice del *Alegato*, págs. 42-128
[7] Apéndice del *Alegato*, 136-232.
[8] Apéndice del recurso, Anejo B.

**II**

**A**

En nuestro ordenamiento jurídico, el mecanismo de sentencia sumaria se rige por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, en síntesis dispone que para poder adjudicar en los méritos una moción de sentencia sumaria lo que se requiere es que se presente "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente" ya sea sobre la totalidad de la reclamación o parte de esta.

Quien promueve la sentencia sumaria "debe demostrar que no existe controversia sustancial o real en cuanto a algún hecho material, es decir, en cuanto a ningún componente de la causa de acción". *Meléndez González v. M. Cuebas*, 193 DPR 100, 110 (2015). Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609. Por otra parte, quien se opone a una sentencia sumaria debe presentar contradocumentos y contradeclaraciones que contradigan los hechos incontrovertidos por parte del promovente. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115,133 (1992). Por lo cual viene obligada a contestar de forma detallada la solicitud de sentencia sumaria.

El mecanismo procesal de la sentencia sumaria es un remedio de carácter extraordinario y discrecional. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 184 (2005). El cual tiene como finalidad "propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales". *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012). Por ser la sentencia sumaria un remedio de carácter discrecional, "[e]l sabio

discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000).

Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González v. M. Cuebas, supra,* págs. 109-110 que cita a *Const. José Carro v. Mun. Dorado, supra.* De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al, supra.*

Se ha pautado que "[l]os jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria" y que "[d]eben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones que hagan las partes". *Vera v. Dr. Bravo,* 161 DPR 308, 333 (2004). Sin embargo, ante un proceso de sentencia sumaria el tribunal está impedido de dirimir cuestiones de credibilidad. *Id.*

Según se ha establecido jurisprudencialmente el tribunal apelativo se encuentra en la misma posición que el tribunal de primera instancia al determinar si procede una sentencia sumaria. Sin embargo, al revisar la determinación de primera instancia, el tribunal de apelación está limitado de dos maneras:

1. s[o]lo puede considerar los documentos que se presentaron ante el foro de primera instancia; y

2. el tribunal apelativo s[o]lo puede determinar si existe o no alguna controversia genuina de hechos

materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales esenciales en disputa. (Énfasis nuestro.) *Vera v. Dr. Bravo, supra*, págs. 334-335.

El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro revisor debido a que está impedido de hacerlo. Por consiguiente, el Tribunal Supremo de Puerto Rico en *Meléndez González et al. v. M. Cuebas, supra*, estableció el estándar que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario". *Id*. pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id*.

Luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta que el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, *supra*, y debe exponer concretamente cuáles hechos materiales encontró que están controvertidos y cuáles están incontrovertidos, es decir, cuales no están en controversia. En lo pertinente, establece lo siguiente:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito […] y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos […]" 32 LPRA Ap. V, R. 36.4.

Esta determinación puede hacerse en la Sentencia que dispone del caso y puede hacer referencia al listado de hechos incontrovertidos que emitió el foro primario en su Sentencia. *Id.* Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar *de novo* si el TPI aplicó correctamente el derecho a los hechos incontrovertidos. *Meléndez González et al. v. M. Cuebas, supra,* pág. 119. A su vez, la Regla 36.3 de Procedimiento Civil, *supra,* dispone como sigue:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, surja que no hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

Se ha reiterado mediante una vasta jurisprudencia que el propósito principal de la sentencia sumaria "es propiciar la solución justa, rápida y económica de litigios que no reflejan controversias genuinas sobre hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo". *Pilot Life Ins. Co. v. Crespo Martínez,* 136 DPR 624, 632 (1994). Sin embargo, hay que aclarar que aligerar la tramitación de un caso no puede soslayar el principio fundamental de alcanzar una solución justa. *García Rivera et. al. v. Enríquez,* 153 DPR 323, 337-338 (2001); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990). Un Tribunal "abusa de su discreción cuando actúa de forma irrazonable, parcializada o arbitraria". *Matías Lebrón v. Depto. Educación,* 172 DPR 859, 875 (2007). Por tanto, corresponde al Tribunal conceder o denegar, en el ejercicio de su discreción, los remedios correspondientes de acuerdo con las circunstancias del litigio.

**B**

El ordenamiento jurídico que rige el despido de empleados en el sector privado está recogido en la *Ley de Despido Injustificado*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 19 LPRA sec. 185a *et seq.* (Ley 80). El Artículo 1 de la Ley 80, establece que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, donde trabaja mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado justa causa, tendrá derecho a recibir de su patrono, además del sueldo devengado, una indemnización adicional. Así pues, como norma general, el obrero contratado sin término fijo que es despedido sin justa causa tiene derecho al remedio de la mesada que provee la Ley 80. *García v. Aljoma*, 162 DPR 572, 585 (2004).

El propósito del estatuto es de orden social y coercitivo, pues busca castigar al patrono que despide a un empleado o empleada sin tener justa causa para ello. *Jusino et als. v. Walgreens*, 155 DPR 560, 571 (2001). El estatuto tiene también un fin reparador porque "provee remedios justicieros y consubstanciales con los daños que puede haberle causado a un cesanteado un despido injustificado". *Id.* Cónsono con este propósito reparador la Ley 80 se debe interpretar de manera liberal, a favor del empleado. *Rivera v. Pan Pepín*, 161 DPR 681, 688 (2004).

En lo pertinente, el Artículo 2 de la Ley 80, 29 LPRA sec. 185b, dispone ciertas circunstancias que constituyen justa causa para la terminación del empleo, como sigue:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
>
> [...]

c. Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

[…]

Cabe señalar que las aludidas instancias no son taxativas, sino que se proveen ejemplos "sobre el tipo de conducta que constituye la razón y motivo justificados para el despido, por estar reñido con la ordenada marcha y normal funcionamiento de una empresa". *Srio. del Trabajo v. G.P. Inds., Inc.*, 153 DPR 223, 244 (2001). Así pues, la lista contenida en la Ley 80 "no excluye otra conducta del empleado que, por estar vinculada al buen funcionamiento de la empresa, podría constituir justa causa para el despido". *Id.* La tarea de los tribunales en casos de despido injustificado es evaluar las situaciones específicas que se les presentan para determinar si existió la justa causa para el despido, aunque la situación no esté específicamente enumerada en el estatuto. *Jusino et als. v. Walgreens, supra*, pág. 572.

Como se sabe, los patronos pueden establecer reglamentos internos para fijar las normas de conducta que regirán en sus lugares de trabajo y los empleados estarán sujetos a estas normas siempre y cuando estas sean razonables. *Rivera v. Pan Pepín, supra*, pág. 689. El Tribunal Supremo ha opinado que la violación reiterada a las reglas de un patrono puede ser motivo justificado para el despido de un trabajador, siempre y cuando: (1) la violación a los reglamentos sea reiterada; (2) las reglas y los reglamentos sean razonables; (3) se suministre oportunamente copia escrita de estas reglas y estos reglamentos al trabajador, y (4) el despido del empleado no se haga por mero capricho del patrono o sin una razón relacionada con el buen y normal funcionamiento del establecimiento. *Feliciano Martes v. Sheraton*, 182 DPR 368, 381-382 (2011) y los casos allí citados. El manual de una empresa que

contiene las reglas y los reglamentos del trabajo y que establece las normas, los beneficios y los privilegios que disfrutará el empleado forman parte del contrato de trabajo. Por tanto, un patrón de incumplimiento de estas normas o reglas pueden dar lugar a un despido justificado. *Id.*, pág. 384. Nuestro alto foro ha expresado que la interpretación de las normas en el empleo es similar a la que se imparte en los contratos de adhesión. *Id.*, pág. 385, que cita a *Santiago v. Kodak Caribbean, Ltd.*, 129 DPR 763, 776 (1992). Así pues, la violación de las normas internas de conducta constituirá justa causa para el despido de empleados, cuando el patrono logre demostrar que las reglas son razonables, que se les suministró copia escrita de dichas normas a los empleados y que el empleado violó las normas en reiteradas ocasiones. *Jusino et als. v. Walgreens, supra*, pág. 573. Es importante señalar que, aunque la Ley 80 no favorece el despido como sanción a la primera falta o única ofensa, el estatuto tampoco lo excluye cuando la intensidad de la falta o el agravio así lo requiera "en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran". *Secretario del Trabajo v. ITT*, 108 DPR 536, 543 (1979).

En relación con los códigos de apariencia personal y vestimenta, Zeno Santiago y Bermúdez Pérez han comentado que la jurisprudencia estadounidense ha contrastado "entre la apariencia como un asunto de preferencia personal y el derecho que tienen los patronos a requerir, como condición de empleo, la implantación y conservación de la imagen que quieren presentar ante sus clientes y competidores" y han señalado que "[l]as restricciones o exigencias por parte del patrono no pueden estar basadas en características inherentes de la persona, y las clasificaciones tienen que ser por igual o similares a base de los estándares de comportamiento aceptables en la sociedad". C. Zeno Santiago y V. Bermúdez Pérez, *Tratado del derecho del trabajo*, Publicaciones JTS, 2014, T.

II, pág. 259. Es decir, es permisible que el patrono adopte un código de vestimenta y la forma en que los empleados deben presentarse a trabajar, siempre y cuando, no se base en características inmutables ni criterios subjetivos o caprichosos al momento de aplicar las normas. Del mismo modo, "[l]as normas deben ser entregadas a cada uno de los empleados". *Id.*, págs. 261-262.

### C

La Constitución de Puerto Rico proscribe el discrimen motivado por razones de sexo. Const. P.R., Art. II, Sec. 1. En el entorno laboral, la *Ley Antidiscrimen de Puerto Rico*, Ley Núm. 100 de 30 de junio de 1959, 29 LPRA sec. 146, *et seq.*, de igual forma prohíbe el discrimen en el empleo en sus múltiples modalidades, entre las cuales se encuentra el sexo. De esta forma, la ley establece responsabilidad civil contra los patronos que despidan, suspendan o discriminen contra un empleado respecto a su compensación, términos, categorías, condiciones o privilegios en su empleo. *Id.*

Los elementos esenciales para una causa de acción por despido discriminatorio de la Ley Núm. 100 son: que el empleado fue despedido, sin justa causa y que existe la modalidad de discrimen alegado. *Díaz Santiago v. International Textiles*, 195 DPR 862, 873 (2016). Corresponde al demandante demostrar específicamente los hechos que fundamentan su reclamo de discrimen. Eliminada la presunción de discrimen previamente contemplada por esta ley, el demandante no puede descansar en alegaciones, por lo cual de entrada debe establecer un caso de discrimen en su totalidad. Este puede hacerlo presentando prueba de discrimen por razón de sexo al probar que: (1) que fue despedido sin justa causa y (2) que está ubicado en la modalidad de discrimen según la cual reclama. *Segarra Rivera v. International Shipping*

*Agency, Inc.*, 208 DPR 964, 988 (2022). Así establecido, el patrono puede demostrar una explicación razonable para el despido.

**D**

La Ley Núm. 115-1991, según enmendada, mejor conocida como la *Ley de Represalias*, 29 LPRA sec. 194, *et seq.*, crea una causa específica de acción sobre daños y perjuicios contra cualquier patrono que discrimine contra algún empleado por ofrecer o intentar ofrecer información o testimonio ante algún foro legislativo, judicial o administrativo. *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 159 (2007). Específicamente, el artículo 2(a) de la Ley Núm. 115, 29 LPRA sec. 194a, dispone como sigue:

> Ningún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

Por su parte, el Artículo 2(b) dispone que "cualquier persona que alegue una violación a esta ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado". *Id.* Además, la ley fija que "la responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de dichas secciones". *Id.*

Finalmente, en lo pertinente, el Artículo 2(c), *Id.*, establece que el empleado debe probar la violación mediante evidencia directa o circunstancial. Sin embargo, este puede "establecer un caso prima facie de violación al demostrar que participó en una actividad

protegida por esta ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo". Establecido lo anterior, le corresponde al patrono fundamentar una razón legítima y no discriminatoria para el despido. *Id.* "De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido". *Id.*

En *Rivera Menéndez v. Action Services*, 185 DPR 431, 445-446 (2012), el Tribunal Supremo destacó que es necesario que el empleado que reclama represalias establezca que participó en una actividad protegida y que luego fue despedido, lo cual establece una presunción *iuris tantum* de violación a esta protección. Por su parte, el patrono tiene la obligación de rebatir la mencionada presunción con una razón justificada que legitime el despido. Entonces, el empleado podrá prevalecer en su reclamo de represalias si demuestra que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio. *Feliciano Martes v. Sheraton, supra,* págs. 393-394. Por otro lado, el empleado puede demostrar la violación de manera directa, mediante evidencia directa o circunstancial que demuestre el nexo causal entre la conducta del demandado y el daño sufrido. *Rivera Menéndez v. Action Service, supra.*

**III**

La apelante acude ante nosotros señalando tres errores cometidos por el foro primario al conceder la solicitud de que se dicte sentencia sumaria y desestimar las causas de acción. La Sra. Ortiz Chéverez argumenta que erró el TPI al conceder la sentencia sumaria, pues no consideró la prueba presentada por esta y tampoco valoró el historial laboral impecable de la apelante ni el contexto discriminatorio de su embarazo que, según alega, fue lo que desembocó en que la despidieran de manera injustificada. Todo

ello en contravención con el estándar establecido para poder aplicar dicho mecanismo. De entrada, pronunciamos que a la apelante no le asiste la razón pues no pudo evidenciar las alegaciones que dan pie a sus causas de acción.

La Sra. Ortiz Chéverez trabajó como maestra en el Colegio Sagrada Familia por medio de contratos anuales que se acordaban por unas fechas fijas. El primero fue otorgado el 15 de septiembre de 2020 y tuvo su vigencia desde ese día hasta el 30 de mayo de 2021. Este fue renovado y el 27 de mayo de 2021 se otorgó un segundo contrato que duraría desde el 1 de julio de 2021 hasta el 31 de mayo de 2022. La cláusula decimosexta del contrato de empleo firmado por la apelante explícitamente establece lo siguiente:

> Este contrato tendrá vigencia a partir del 1 de julio de 2021 hasta el 31 de mayo de 2022. Si el Maestro, con la autorización expresa o implícita de La Contratante, continúa prestando los servicios contratados luego de concluido dicho período, se entenderá que el contrato ha sido renovado automáticamente de mes a mes bajo los mismo[s] términos y condiciones. Las partes reconocen que este supuesto no cambia la naturaleza de tiempo determinado de este contrato. El Maestro reconoce que este contrato no le otorga una expectativa de continuidad de empleo alguno.[9]

Dicho contrato fue iniciado y firmado por la Sra. Ortiz Chéverez y como queda meridianamente claro dicha cláusula no es ambigua en su lenguaje de tal manera que amerite una interpretación u análisis judicial. El último día de trabajo de la apelante fue el 30 de mayo de 2022, cumpliendo así con lo inicialmente acordado. Por tanto, se desprende del expediente que la apelante no fue despedida de manera injustificada y tampoco pudo establecer mediante evidencia un caso prima facie que sustente sus alegaciones de discrimen y represalias. A base de lo anterior, resolvemos que procede confirmar el dictamen emitido por el TPI, en virtud del cual declaró con lugar la *Moción de Sentencia*

---

[9] Apéndice del *Alegato de la parte apelada,* pág. 114.

*Sumaria* presentada por las apeladas. A su vez, concluimos que actuó correctamente el TPI al desestimar la demanda con perjuicio en todos sus extremos. De igual modo, determinamos que no hay controversia sustancial en cuanto a los hechos esenciales en el presente caso, por todo lo cual el foro apelado no cometió los señalamientos de errores presentados por la Sra. Ortiz Chéverez.

**IV**

Por los fundamentos anteriormente esbozados, confirmamos la sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones